UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
INGE G. BEHREND,

        Plaintiff,

      against

JOEL KLEIN, CHANCELLOR OF THE NEW YORK
CITY BOARD OF EDUCATION, individually and in
his official capacity, MICHELLE LLOYD-BEY,
individually and in her official capacity as Community
Superintendent of District 27, LAWRENCE BECKER,
individually and in his capacity as Chief Administrator,
Division of Human Resources, and THE NEW YORK
CITY BOARD OF EDUCATION (d/b/a The New York
City Department of Education),

        Defendants.
-----------------------------------------------------------------X
BETH HUDSON,

        Plaintiff,

      against

JOEL KLEIN, CHANCELLOR OF THE NEW YORK
CITY BOARD OF EDUCATION, individually and in
his official capacity, MICHELLE LLOYD-BEY,
individually and in her official capacity as Community
Superintendent of District 27, LAWRENCE BECKER,
individually and in his capacity as Chief Administrator,
Division of Human Resources, and THE NEW YORK
CITY BOARD OF EDUCATION (d/b/a The New York
City Department of Education),

        Defendants.
-----------------------------------------------------------------X

GARAUFIS, United States District Judge.

**MEMORANDUM & ORDER**
04-CV-5413(NGG)(SMG)

**MEMORANDUM & ORDER**
04-CV-5414(NGG)(SMG)

Defendants Joel Klein, Chancellor of the New York City Board of Education, individually and in his official capacity, Michelle Lloyd-Bey, individually and in her official capacity as Community Superintendent of District 27, Lawrence Becker, individually and in his capacity as Chief Administrator, Division of Human Resources, and the New York City Board of Education (d/b/a The New York City Department of Education) (collectively, "Defendants"), move to dismiss the complaints of Plaintiff Inge G. Behrend ("Behrend") and Beth S. Hudson ("Hudson") (collectively, "Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Plaintiffs move to consolidate their cases. For the reasons set forth below, Plaintiffs' motion to consolidate their cases is DENIED, except that I consider Defendants' motions to dismiss Plaintiffs claims together. Defendants' motion is DENIED as to Plaintiffs' due process claims, and GRANTED as to Plaintiffs' equal protection and state claims.

## I.      FACTUAL BACKGROUND

As this is a motion to dismiss under Fed. R. Civ. P. 12(b)(6), this recitation of the facts shall presume the truth of all facts as alleged by the Plaintiff, and allow for all permissible inferences in favor of Plaintiff's claims.

### A.      Facts Regarding Behrend

Behrend began working in New York City public schools as a substitute teacher, between 1988-1989 and again between 1993-1997. (Verified Complaint of Inge G. Behrend, dated Nov. 10, 2004 ("Behrend Compl.") ¶ 17.) From 1997-2002, Behrend worked as a teacher's assistant, receiving in 2001 a New York State license to teach elementary school children, and to teach music classes, and in 2002 a New York City license to teach pre-kindergarten and elementary school classes. (Id. ¶¶ 17-18, Ex. A, B.) In 2002, Defendants hired Behrend as a probationary pedagogical employee to teach pre-Kindergarten classes in P.S. 108Q. (Id. ¶ 21.) At the end of

2

the 2002-2003 school year, Behrend received a 'satisfactory' annual review.  (Id. ¶ 22, Ex. C.)

In 2003-2004, Plaintiff received critical reviews from her supervisors, and at the end of that year

received an 'unsatisfactory' annual review.  (Id. ¶¶ 23, 29, Ex. D.)  Plaintiff responded to these

criticisms by letter, alleging that the criticisms were inaccurate and unfair.  (Id. ¶ 23, Ex. D.)  By

letter dated July 14, 2004, the regional superintendent informed Behrend that her probationary

employment was discontinued, and her license terminated, as of July 21, 2004.  (Id. ¶ 31, Ex. E.)

By letter dated July 30, 2004, Behrend learned that she was placed on an "Ineligible List" that

prevents Behrend from being employed within the New York City public schools.  (Id. ¶ 31, Ex.

F.)

## B.    Facts Regarding Hudson

Hudson began working in New York City public schools as a substitute teacher, between

1996-1998.  (Verified Complaint of Beth S. Hudson, dated Nov. 16, 2004 ("Hudson Compl.") ¶

16.)  Around February 1998, Hudson attained two New York City licenses to teach early

childhood classes and to teach "common branch subjects."  (Id. ¶ 15, Ex. A.)  In addition,

Plaintiff has a license from the New York State Education Department to teach nursery school,

kindergarten, elementary school, and special education classes.  (Id. ¶ 17, Ex. B.)  In September

2003, Defendants hired Hudson as a probationary pedagogical employee to teach bilingual

special education kindergarten classes in P.S. 108Q.  (Id. ¶ 20.)  In the first months of her

position, she received satisfactory reviews and commendations for her teaching performance.

(Id. ¶ 21-22.)  However, based upon one letter and two classroom observations, Hudson received

an "unsatisfactory" rating at the end of the 2003-04 teaching year.  (Id. ¶ 28.)  By letter dated

July 14, 2004, the regional superintendent informed Hudson that her probationary employment

was discontinued, and her license terminated, as of July 21, 2004.  (Id. ¶ 29-30, Ex. E.)  Hudson

was also informed by letter dated July 30, 2004 that she was placed on an "Ineligible List" that prevents Hudson from being employed within the New York City public schools.  (Id. ¶ 29-30, Ex. F.)

**C.    Facts Regarding License Termination Process**

Chancellor Regulation C-31 provides that upon termination of a city teaching license, probationary employees are placed on an "Ineligible List," and are ineligible for employment in New York City public schools.  (Behrend Compl. ¶ 40, 49; Hudson Compl. ¶ 39.)  The "Ineligible List" is then disseminated to all school districts in New York City, the State Department of Education, and to "to school districts throughout New York, New Jersey, and Connecticut areas[.]"  (Behrend Compl. ¶¶ 12-13; Hudson Compl. ¶¶ 12-13.) New York City Public Schools Bylaws § 4.3.1 provides that Plaintiffs, as probationary employees given an 'unsatisfactory' rating, are entitled to review of that determination.  (Behrend Compl. ¶ 34; Hudson Compl. ¶ 33-34.)  Review is to be made "as soon as practicable, but in any event not later than one year from the date of the receipt of the rating by the appellant."  (Behrend Compl. ¶ 37; Hudson Compl. ¶ 36.)  Regulation C-31, issued on October 16, 2002, provides for hearings for probationary employees who are given an 'unsatisfactory' rating.  (Behrend Compl. ¶ 36; Hudson Compl. ¶ 35.)  Representation of probationary teachers is delegated to the teachers' union, which has sole discretion to appoint the employees' advocates.  (Behrend Compl. ¶ 38; Hudson Compl. ¶ 37.)  Plaintiffs allege that hearings are routinely conducted later than one year after the determination.  (Behrend Compl. ¶ 39; Hudson Compl. ¶ 38)  Probationary employees who receive an "unsatisfactory" rating are prohibited from employment in the New York City public schools between the initial determination and the hearing.  (Behrend Compl. ¶ 41; Hudson Compl. ¶ 40.)

New York City is the only region in New York State that requires an additional level of licensing to teach in the region. (Behrend Compl. ¶¶ 45, 47; Hudson Compl. ¶¶ 44, 46.) In other regions, a license to teach can only be revoked after a timely hearing with representation by counsel of choice. (Behrend Compl. ¶ 47; Hudson Compl. ¶ 46.) Moreover, termination of Plaintiffs' licenses and placement of them on the "Ineligible List" has resulted in their being unable to secure employment as teachers anywhere in New York State, and has stigmatized them professionally in their search for other teaching positions. (Behrend Compl. ¶¶ 49-51; Hudson Compl. ¶¶ 48-50.)

C.  **Procedural History**

Plaintiffs filed their separate complaints in November 2004, alleging the same causes of action: the Defendants' termination of Plaintiffs' New York City licenses prior to a hearing (1) violated Plaintiffs' rights to due process because of Plaintiffs' property interest in their licenses (Behrend Compl. ¶¶ 53-54; Hudson Compl. ¶¶ 52-53); and (2) Plaintiff's liberty interest in their professional reputation and future employment in their profession (Behrend Compl. ¶¶ 55-60; Hudson Compl. ¶¶ 54-59); (3) violated the Privileges and Immunities Clause of the New York Constitution (Behrend Compl. ¶¶ 65-66; Hudson Compl. ¶¶ 64-65), and (4) lacked a rational basis under an equal protection analysis (Behrend Compl. ¶¶ 63-64; Hudson Compl. ¶¶ 62-63); (5) conducting the hearing without affording Plaintiff with a right to counsel of choice violated their due process rights (Behrend Compl. ¶¶ 61-62; Hudson Compl. ¶¶ 60-61); (6) Chancellor's regulation C-31 is not authorized by law (Behrend Compl. ¶¶ 67-73; Hudson Compl. ¶¶ 66-72); (7) Defendants' termination of Plaintiffs' licenses was arbitrary and capricious (Behrend Compl. ¶¶ 74-75; Hudson Compl. ¶¶ 73-74); and (8) Defendants' termination of Plaintiffs' licenses and placement of Plaintiffs on the "Ineligibility List" constitute tortious interference with Plaintiffs'

contractual relationships and economic advantage (Behrend Compl. ¶¶ 76-79; Hudson Compl. ¶¶ 75-78).

The parties consented to consolidate the cases for the purposes of discovery. Plaintiffs now move to consolidate their cases for trial purposes, and Defendants move to dismiss Plaintiffs' due process claims based on their property and liberty interests, equal protection, and state law claims.[1]

## II.    DISCUSSION

## A.    Motions to Consolidate

The Federal Rules of Civil Procedure Rule 42(a) provides that "[w]hen actions involving a common question of law or fact are pending before the court, . . . [the court] may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." Fed. R. Civ. P. 42(a). Upon finding that the actions involve common questions of law or fact, this court "has broad discretion in determining whether consolidation is appropriate," and must balance the efficiency gained through consolidation against possible prejudice to the parties. Johnson v. Kerney, No. 91-CV-1993, U.S. Dist. LEXIS 18503, at *16 (E.D.N.Y. 1993) (J. Sifton) (citing Hendrix v. Raybestos-Manhattan, Inc. 776 F.2d 1492 (11th Cir. 1985)).

Plaintiffs allege that they worked in the same school at about the same time, were terminated at approximately the same time, and have sued the same Defendants. Further,

_____

[1] Defendants urge without discussion that this court should dismiss Plaintiffs' state privileges and immunities claim and administrative claims "for the same reasons" as Plaintiffs' other claims. (See Defendants' Mem. Supp. Mot. Dismiss Behrend at 14-15; Defendants' Mem. Supp. Mot. Dismiss Hudson at 14-15.) This court declines Defendants' invitation to engage in a *sua sponte* analysis of the sufficiency of Plaintiffs' allegations of these claims.

Plaintiffs assert identical legal claims. Plaintiffs' complaints therefore implicate common questions of law and fact. The similarities of Plaintiffs' complaints justified their consolidation for the limited purpose of pre-trial discovery. Furthermore, as the parties' briefs submitted in support of and opposition to these motions are virtually identical, I shall consider Defendants' motions to dismiss together in this Memorandum and Order.

However, as there has not been an answer to Plaintiffs' complaints, and this court is not aware of the specific facts surrounding Plaintiffs' claims, Plaintiffs' motions to consolidate for trial purposes is premature. Significantly, this court is unaware of whether a trial of these matters would require the same witnesses, or if the events leading to Plaintiffs' dismissals and license terminations are such that Plaintiffs may rely on different legal theories to support their claims at trial. Hence, it is not at this time clear to this court whether consolidation for trial purposes would result in judicial economy or prejudice the parties. I therefore deny Plaintiffs' motion to consolidate these cases, but grant leave to Plaintiffs to renew their motions to consolidate before trial.

**B.      Motion to Dismiss**

*1.      Standard of Review*

In reviewing a motion to dismiss for failure to state a claim brought pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999). The complaint may be dismissed only if "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hoover v. Ronwin, 466 U.S. 558, 587 (1984) (citing Conley

v. Gibson, 355 U.S. 41, 45-46 (1957)).  This rule "applies with particular force" where plaintiffs allege a civil rights violation.  Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998).  In deciding such a motion, the "issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."  Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996) (internal quotations omitted).  This court may consider documents incorporated by reference in a motion under Fed. R. Civ. P. 12(b)(6).  See Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005).  As Plaintiffs in their complaints annex documents to support their allegations, and refer to the regulations and procedures submitted by Defendants in support of their motions to dismiss, I shall therefore consider these documents in deciding these Fed. R. Civ. P. 12(b)(6) motions.

**2.**      ***Plaintiffs' Claims***

       *a.*      *Due Process*

       (1)      Property Interest

Plaintiffs first claim that they had a property interest in their New York City teaching licenses such that Defendants' termination of their teaching licenses before providing them with a hearing to adjudicate the basis of the revocation of the licenses violated their due process rights.  (Behrend Mem. Opp. Mot. Dismiss ("Behrend Mem.") at 6-14; Hudson Mem. Opp. Mot. Dismiss ("Hudson Mem.") at 6-15.)  Defendants argue that this claim must be dismissed because (a) Plaintiffs have no property interest in their New York City teaching licenses; (b) to the extent that Plaintiffs have a property interest in their New York City teaching licenses, the Board of Education bylaws and Chancellor's Regulation C-31 afford teachers with sufficient procedural protections to satisfy their due process rights; and (c) the availability of state appellate review of Defendants' administrative license revocations satisfies their due process rights.  (Defendants'

Mem. Supp. Mot Dismiss Behrend Complaint ("Def's' Mem. Dismiss Behrend") at 4-10; Defendants' Mem. Supp. Mot Dismiss Hudson Complaint ("Def's' Mem. Dismiss Hudson") at 4-9.)

The Fourteenth Amendment's protection of property is a "safeguard of the security of interests that a person has already acquired in specific benefits." Board of Regents v. Roth, 408 U.S. 564, 576, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Property interests are created and their dimensions are defined with reference to state law. Id. at 577. Where a property interest is created by state law, "the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status." Paul v. Davis, 424 U.S. 693, 710-11, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976).

Under New York law, Plaintiffs have no property interest in their probationary employment. Longarzo v. Anker, 578 F.2d 469, 471 (2d Cir. 1978). However, it is an open question as to whether the issuance of a New York City teacher's license conveys a property interest. In Lombard v. Board of Educ. of the City of New York, 645 F. Supp. 1574, 1577 (E.D.N.Y. 1986) (Korman, C.J.), the court addressed the question of whether a New York City teaching license entitled plaintiff with a property right independent of probationary employment "to a meaningful opportunity to seek employment pursuant to the license." Id. at 1577. In that case, the court addressed a change in New York education law which divested from the New York City Board of Education ("BOE") the right to appoint and dismiss elementary school teachers, and vested that power in each of the thirty-one newly created community school districts. Id. With the decentralization of the power to hire and fire, a New York City teaching license was not coterminous with probationary employment: upon termination from an individual school by a community school district, the license enabled the teacher to obtain

employment elsewhere in the New York City public school system.  Id. (discussing Matter of

Baronat, 11 Educ. Dept. Rep. 150 (1972)).  The court further discussed state court decisions

holding that a teaching license confers a property interest.  Id. at 1578 n.5 (citing Lehman v.

Board of Education, 82 A.D.2d 832, 439 N.Y.S.2d 670 (2d Dept. 1981); Greenwald v.

Community School Board No. 27, 42 A.D.2d 965, 966, 347 N.Y.S.2d 969 (2d Dept. 1973)).  In

Lehman, a New York appellate court relied on Baronat to hold that "A board of education may

not terminate a teaching license without first holding a hearing at which proper procedural

safeguards are employed."  Lehman, 82 A.D.2d at 834.  In Greenwald, a New York appellate

court construed Baronat to require procedural safeguards when revoking a New York City

teaching license, and distinguished this question from the issue of termination of probationary

employment, in which the teacher has no property interest.  Greenwald, 42 A.D.2d at 971.

Having found that state law recognized that a New York City teaching license created a property

interest in "the opportunity to seek employment in all thirty-one districts," the court in Lombard

ruled that this property interest required New York City to provide procedures for a license

holder to contest its revocation in order to satisfy the Due Process Clause of the U.S.

Constitution.  Lombard, 645 F. Supp. at 1579.

     However, since Lombard, the landscape of education law in New York City has

undergone important changes that have left this holding insecure.  BOE now has the power to

appoint and dismiss personnel, including probationary teachers.  See New York Education Law

§ 3012(a); New York City Board of Education Bylaws § 4.2.1, annexed as Def's' Mem. Dismiss

Hudson, Ex. 3 at 9.  Furthermore, pursuant to Chancellor's Regulation C-31, the New York City

Department of Education ("DOE") Office of Appeals and Review reviews the dismissal and

license revocation of a discontinued probationary pedagogical employee in a single hearing.

(See Chancellor's Regulation C-31 § 3.1, annexed as Defendants' Mem. Dismiss Hudson, Ex. 4 at 4.)  It thus appears that the power to fire and revoke licenses are now centralized within BOE and DOE.

Neither party cites to Second Circuit or Supreme Court authority that would control this issue.  However, the burden to establish a failure to state a claim lies with the movant, and the cases that Defendants cite in support of their position do not persuade this court that dismissal of this claim is warranted under the lenient standards set forth in Fed. R. Civ. P. 12(b)(6).  In Oparaji v. N.Y. City Dep't of Educ., 03-CV-4105, 2005 U.S. Dist. LEXIS 13043 (E.D.N.Y. June 14, 2005) (Gershon, J.), the plaintiff was found not to have a property interest in his denied *application* for certain teaching licenses because "the issuance of a license to teach in the New York City public schools is considered a privilege, rather than an entitlement, within the discretion of the Dept. of Education."  Id. at *24.  In Moore v. New York City Dep't of Educ., 03-CV-2034, 2004 U.S. Dist. LEXIS 5338 (S.D.N.Y. Mar. 31, 2004), the question was whether plaintiff, a probationary teacher, had a property interest in his *employment*.  Id. at 12.  Similarly, in Von Gizycki v. Levy, 771 N.Y.S.2d 174, 175, 3 A.D.3d 572, 573 (2d Dep't 2004), the Appellate Division principally held that the *procedures* that New York City provided the probationary teacher in dismissing her and terminating her license satisfied the teacher's due process rights.  Id. at 175.  Oparaji, Moore and Levy do not address the question at hand, whether *the issuance* of a license creates a *property interest* under state law.

By contrast, Defendants' reliance on Rogovin v. N.Y. City Bd. Educ., 99-CV-3382, 2001 U.S. Dist. LEXIS 11923 (E.D.N.Y. Aug. 17, 2001) (Korman, C.J.) is well placed.  In Rogovin, a probationary music teacher challenged the discontinuation of his employment, in which he could work as a public school music teacher in New York, because his name was placed on an

"ineligible list" in which he could not obtain employment anywhere in the Chancellor's jurisdiction.  Id. at *7.  The plaintiff, relying on Lombard, argued that this process violated his due process rights because it constructively revoked his license to teach in New York City without any procedural protections.  The court granted defendants' motion for summary judgment, finding that plaintiff's license only "conveys a mere expectancy of employment" that the Chancellor, who has the power to hire and fire teaching staff, could constructively revoke concurrently with dismissal so long as the revocation was consistent with state law.  Id. at *15-*16.  The court distinguished Lombard, which was decided before New York City had again centralized its direct control over the hiring and firing of personnel.  Id. at *15.

While Rogovin strongly suggests that the centralization of dismissal and license revocation authority under the BOE and DOE has limited Plaintiffs' property interest in their New York City teaching licenses since Lombard, "the issue is not whether . . . plaintiff[s] will ultimately prevail but whether [they are] entitled to offer evidence to support the claims." DeMuria v. Hawkes, 328 F.3d 704, 706 (2d Cir. 2003) (internal quotation and citation omitted). Under this lenient standard, dismissal of this claim is not warranted.  While the BOE bylaws and Chancellor's regulations state that probationary employees are dismissed and their licenses revoked pursuant to a city-wide process, the regional superintendent's letters to Plaintiffs state that "I reaffirm your discontinuance of probationary service and termination of your license." (Behrend Compl. Ex. E; Hudson Comp. Ex. E.)  These letters suggest that whatever official policies exist, the regional superintendent held the ultimate authority in revoking Plaintiffs' city-wide licenses.  As in Lombard, the regional superintendent's revocation of Plaintiffs' city-wide licenses may have violated Plaintiffs' right to a meaningful opportunity to obtain work in other regions of the New York City public school system in which the superintendent does not have

authority.  Moreover, New York courts have not overruled <u>Baronat</u>, <u>Lehman</u>, and <u>Greenwald</u>, which suggests that probationary teachers retain a property interest in their teaching licenses independent of their employment.  Plaintiffs' allegations therefore state a property interest.

Furthermore, Defendants have failed to demonstrate to this court that dismissal of Plaintiffs' action is required because sufficient procedures were provided to them.  While Defendants argue that their actions comported with Chancellor's Regulation C-31 and BOE's bylaws, Plaintiffs allege that their license revocations occurred in a manner that violates BOE's bylaws and the Chancellor's regulations, inasmuch as Plaintiffs allege that their hearings occurred over a year after their terminations.  While Defendants argue that this allegation should be disregarded as "conclusory," on a Fed. R. Civ. P. 12(b)(6) motion, this court "must accept as true all the factual allegations in the complaint."  <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993), and "draw all reasonable inferences in plaintiffs' favor," <u>Freedom Holdings Inc. v. Spitzer</u>, 357 F.3d 205, 216 (2d Cir. 2004).  District court decisions relied on by Defendants in support of their position that the procedural protections provided to Plaintiffs were sufficient are easily distinguishable.  <u>Segal v. City of New York</u>, 368 F. Supp. 2d 360 (S.D.N.Y. 2005) and <u>Koehler v. New York City</u>, 04-CV-6929, 2005 U.S. Dist. LEXIS 8901 (S.D.N.Y. May 11, 2005) do not discuss probationary teachers' *property* interest in their license, but rather their *liberty* interest in their professional reputation, which shall be discussed <u>infra</u>.  <u>Segal</u>, 368 F. Supp. 2d at 362-63; <u>Koehler</u>, 2005 U.S. Dist. LEXIS 8901, at *4.

Lastly, Defendants' argument that Plaintiffs are barred from litigating this claim through Section 1983 because they could have litigated their license revocation through a state Article 78 proceeding is without merit.  Plaintiffs argue that their property interest in their New York City

13

teaching license required a pre-revocation hearing to satisfy their due process rights. The Supreme Court instructs that if a property interest is extinguished pursuant to "established state procedure" that requires a pre-deprivation constitutional safeguard, that a post-deprivation remedy such as a state Article 78 proceeding does not satisfy due process. Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982). Accordingly, Defendants' motion to dismiss Plaintiffs' due process claim on this ground is denied.

(2)     Liberty Interest

Next, Plaintiffs allege that Defendants' termination of their New York City teaching licenses and placement of their names on the "Ineligible List" harmed their reputations in a manner that "rose to the level of stigmatization to trigger a liberty interest," thus requiring a hearing prior to revoking their licenses. (Behrend Mem. at 15; Hudson Mem. at 15.) Defendants argue that Plaintiffs' liberty interests were not implicated by these actions because the information that Defendants disseminated in the "Ineligible List," that their licenses were revoked, was true. (Def's' Mem. Dismiss Behrend at 11; Def's' Mem. Dismiss Hudson at 11.)

An individual is entitled to due process for a protected liberty interest where one's "good name and reputation" are placed into question by a public agency. Munno v .Town of Orangetown, 391 F. Supp. 2d 263, 271 (S.D.N.Y. 2005). Loss of reputation can constitute deprivation of a liberty interest in the course of dismissal from government employment. See Patterson v. City of Utica, 370 F.3d 322, 329-30 (2d Cir. 2004). However, damage to one's reputation is not "by itself sufficient to invoke the procedural protection of the Due Process Clause." Paul v. Davis, 424 U.S. 693, 701, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976). Instead, the Second Circuit instructs that for a claim grounded in a liberty interest to survive, plaintiff must demonstrate both a stigma and "some other tangible element in order to rise to the level of a

14

protectible liberty interest." Valmonte v. Bane, 18 F.3d 992, 999 (2d Cir. 1994) (citing Paul, 424 U.S. at 701). This claim, commonly referred to as a "stigma-plus" claim, requires Plaintiffs to show: (1) a stigmatizing statement that calls into question their "good name, reputation, honor, or integrity," Patterson, 370 F.3d at 330, or denigrates their "competence as a professional and impugn[s their] . . . professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession," Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 631 (2d Cir. 1996), cert. denied, 519 U.S. 1150, 117 S. Ct. 1083, 137 L. Ed. 2d 218 (1997); (2) the public dissemination of the stigmatizing statement, Patterson, 370 F.3d at 330; and (3) "that the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment." Segal v. City of New York, 459 F.3d 207, __, 2006 U.S. App. LEXIS 20118, at *14 (2d Cir. Aug. 3, 2006).[2]

Regarding the first factor, whether Defendants' actions stigmatized their reputation or placed a significant roadblock on their ability to practice in their profession, Plaintiffs' allegations give rise to the inference that the "Ineligibility List" has placed a "significant roadblock" on Plaintiffs' abilities to secure future employment as teachers in schools in New York State. Donato, 96 F.3d at 631. It is reasonable to infer that schools throughout New York State ensure that applicants for teaching positions are licensed prior to extending an offer of employment, and do not hire applicants whose New York City teaching licenses are revoked on the assumption that they are not competent teachers. These inferences are supported by Plaintiffs' allegations that the list is distributed to schools throughout New York, Connecticut

_____

[2] Because Segal is a recently filed decision, the Federal Register has not yet paginated the decision. I shall instead provide citations to the electronic reporter.

and New Jersey, and that their placement on the "Ineligibility List" precludes them from securing employment as teachers. Accordingly, I find Plaintiffs successfully allege that the "Ineligibility List" constitutes a "significant roadblock" to Plaintiffs' ability to obtain future employment. See O'Neill v. City of Auburn, 23 F.3d 685, 692 (2d Cir. 1994) (holding that a government announcement that an employee is incompetent and can no longer carry out the functions of her or his job would place a considerable burden on that employee's ability to obtain future employment); Valmonte, 18 F.3d at 1001 (finding that a child care worker's placement on a state registry of child abusers constitutes a "stigma-plus" action because state law required potential employers to consult the list before they may hire her).

The cases cited by Defendants in support of their argument that Plaintiffs fail to allege a "stigma-plus" harm are distinguishable. The two cases relied on most heavily by Defendants, Rogovin and Donato, are distinguishable primarily because those cases addressed motions pursuant to Fed. R. Civ. P. 56, after the plaintiffs have had the opportunity to prove their allegations. See Donato, 96 F.3d at 627; (reviewing district court's grant of summary judgment); Rogovin, 2001 U.S. Dist. LEXIS 11923, at *9-*10 (deciding cross-motions for summary judgment). Unlike the courts in Donato and Rogovin, this court is constrained to accept as true all the allegations in the complaints. The two cited cases in which "stigma-plus" claims were dismissed pursuant to Fed. R. Civ. P. 12(b)(6) are factually distinguishable from the instant complaints. In McDonald v. Board of Educ., 01-CV-1991, 2001 U.S. Dist. LEXIS 10325 (S.D.N.Y. July 25, 2001), the plaintiff admitted that she committed the action that resulted in her termination and failed to allege that the "stigmatizing" statements were published. Id. at *21-*22. In Schlesinger v. New York City Transit Auth., 00-CV-4759, 2001 U.S. Dist. LEXIS 632 (S.D.N.Y. Jan. 26, 2001), the plaintiff failed to claim an employment action that implicated a

liberty interest because he merely alleged "harm [to] his future promotional opportunities," and not that he was disciplined or terminated. Id. at *23-*24. Accordingly, Plaintiffs' have successfully alleged a "stigma-plus" injury.

I further find that Plaintiffs' allegations that the "Ineligibility List" is published to all New York City public schools, the State Department of Education, and to prospective employers upon request, satisfies the public dissemination requirement of this claim. Lastly, as Plaintiffs allege that the "Ineligibility List" was disseminated at the time of termination, Plaintiffs have met the last temporal prong of this element. Plaintiffs have thus shown a "stigma-plus" liberty deprivation.

Next, this court must consider whether sufficient procedures were provided to satisfy Plaintiffs' liberty interests. The Second Circuit has recently held that the post-deprivation procedures set forth in Chancellor's regulation C-31 satisfied a dismissed probationary employee's due process right to "clear" her name of the alleged conduct that resulted in her termination. In Segal, the Second Circuit considered the liberty interest claim of a probationary teacher who was fired upon accusations that she subjected a student to corporal punishment. The plaintiff argued that because of the nature of the termination, pre-deprivation procedures were required to contest the school's allegations. The Court of Appeals held that where a probationary teacher is fired for cause, "the availability of an adequate, reasonably prompt, post-termination name-clearing hearing is sufficient to defeat an at-will employee's stigma-plus claim[.]" Segal, 2006 U.S. App. LEXIS 20118, at *20. Furthermore, after employing the balancing test articulated in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), the court held that the specific procedures set forth in Chancellor's regulation C-31 were adequate to protect the plaintiff's reputational and professional interests. Id. at *20-*27.

Plaintiff's contention that they were entitled to a hearing before revocation of their licenses is therefore foreclosed by Segal, in which the Second Circuit held that a reasonably prompt post-deprivation hearing is sufficient to satisfy their "stigma-plus" claim.

However, the Court of Appeals in Segal did not address the question of "what constitutes a reasonably prompt post-termination hearing," id. at *27 n.7, because the plaintiff in that case waived her right to the hearing. Moreover, Plaintiffs allege that they received a hearing after the time period allowed for in Chancellor's regulation C-31, which distinguishes the termination procedures at issue in Segal from those alleged by Plaintiffs. (Behrend Compl. ¶ 39; Hudson Compl. ¶ 38.) Under the lenient standards of Fed. R. Civ. P. 12(b)(6), I find that this allegation is sufficient to state a claim that they did not receive "reasonably prompt" hearings to challenge the allegations that led to the revocation of their licenses. I therefore deny Defendants' motion to dismiss this claim.

      *b.    Equal Protection*

Next, Plaintiffs claim that their equal protection rights were violated because they were "treated differently than teachers in public school districts elsewhere in New York State." (Behrend Mem. Opp. Mot. Dismiss, at 19; Hudson Mem. Opp. Mot. Dismiss 18.) Defendants argue that teachers are not a suspect class, and that New York City license revocation procedures are rationally related to the Defendants' legitimate interest in distinguishing between pedagogical employees that successfully complete their probationary service, and those that do not. (Def's' Reply Mem. Supp. Mot. Dismiss Behrend at 7-8; Def's' Reply Mem. Supp. Mot. Dismiss Hudson at 7-8.)

"'Unless laws create suspect classifications or impinge upon constitutionally protected rights, it need only be shown that they bear some rationally related relationship to a legitimate

18

state purpose.'" 701 Pharmacy Corp. v. Perales, 930 F.2d 163, 165 (2d Cir. 1991) (quoting City of Dallas v. Stanglin, 490 U.S. 19, 23, 109 S. Ct. 1591, 1594, 104 L. Ed. 2d. 18 (1989)) (internal quotation omitted).  "It is beyond doubt that being relicensed as a teacher does not constitute a fundamental right.  Similarly, dismissed New York City teachers are not considered a suspect class[.]"  Malley v. Fernandez, 91-CV-5635, 1992 U.S. Dist. LEXIS 11993, at *18-*19 (S.D.N.Y. 1992); see also Roemer v. Bd. of Educ., 290 F. Supp. 329, 331 (E.D.N.Y. 2003) (concluding that "dismissed New York City schoolteachers are not a suspect class").  Therefore, this court considers Plaintiffs' equal protection claim under the deferential rational basis test, which requires this court to consider whether Defendants' New York City teaching license revocation policies and procedures bear "some fair relationship to a legitimate public purpose." Plyler v. Doe, 457 U.S. 202, 216 (1982).

Plaintiffs' equal protection claim fails at the outset because Plaintiffs have not alleged that Defendants in instituting a licensing issuance and revocation policy and procedure created a classificatory scheme.  Plaintiffs have not alleged that they were treated differently from any other teachers who obtained New York City teaching licenses or have had those licenses revoked.  Instead, Plaintiffs ground their equal protection claim on the allegation that Defendants' licensing requirements, which are more stringent than other areas of New York State, discriminate against teachers who wish to teach in New York City.  This claim is without merit because Plaintiffs' complaints, BOE's bylaws, and the Chancellor's regulations make clear that Defendants do not set licensing requirements outside of New York City.  Therefore, Plaintiffs fail to allege that Defendants' licensing requirements are in any way discriminatory. Furthermore, Defendants' license revocation procedures advance the legitimate government

19

interest in preventing public schools in its jurisdiction from hiring employees who have failed the probationary period.  Therefore, Plaintiffs' equal protection claim must be dismissed.

        *c.*      *State Claims*

Defendants move to dismiss Plaintiffs' state claims that Defendants' revocation of their New York City teaching licenses constitutes tortious interference with their contractual relationship and their economic interests.  Defendants urge that Plaintiffs failed to allege that Defendants actions constitute tortious interference with economic advantage because Defendants "'acted for the sole purpose of harming the plaintiff[s].'"  (See Def's' Mem. Dismiss Behrend at 15 (quoting Snyder v. Sony Music Entertainment, 684 N.Y.S.2d 235, 239, 252 A.D.2d 294, 300 (1st Dep't 1999)); Def's' Mem. Dismiss Hudson at 15 (quoting Snyder, 684 N.Y.S.2d at 239).) Furthermore, Defendants argue that Plaintiffs' tortious interference with contractual relation claim must be dismissed on the grounds that Plaintiffs allege no contractual relationship with third parties, Defendants' knowledge of the relationship, any intentional procuring of a breach of the contract, or damages caused by the breach, as required under New York law.  (See Def's' Mem. Dismiss Behrend at 15 (citing Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 94,  612 N.E.2d 289, 292, 595 N.Y.S.2d 931, 934 (N.Y. 1993)); Def's' Mem. Dismiss Hudson at 15 (citing Kronos, 81 N.Y.2d at 94).)  Plaintiffs respond that their allegation that Defendants placed them on the "Ineligibility List" without a conducting a "pre-deprivation" hearings meets the elements of both claims, and that dismissal is premature.  (Behrend Mem. at 19; Hudson Mem. at 19.)

I find that both these claims must be dismissed.  The gravamen of a tortious interference claim under New York law is that conduct by a party was intentionally designed to cause another party's contractual breach or economic injury.  See MTI/The Image Group, Inc. v. Fox Studios East, Inc., 690 N.Y.S.2d 576, 262 A.D.2d 20 (1st Dep't 1999) (assigning error to trial court for

failing to dismiss tortious interference claims for failure to demonstrate malice). However, Plaintiffs' claims are bare of any allegation that would allow a reasonable inference that Defendants placed Plaintiffs on the "Ineligibility List" and disseminated it because of a specific intent to improperly interfere with Plaintiffs' contractual relations or economic advantage. On the contrary, Plaintiffs affirmatively state in their complaints that Defendants placed them on the "Ineligibility List" and distributed the list to New York City public schools and the New York State Department of Education pursuant to the Chancellor's regulations. (Behrend Compl. ¶¶ 32, 40; Hudson Compl. ¶¶ 31, 39.)

Accordingly, Plaintiffs' tortious interference with economic advantage claim must be dismissed because it fails to allege that Defendants used "improper means or acted solely for the purpose of injuring plaintiff[.]" Lockheed Martin Corp. v. Aatlas Commerce Inc., 725 N.Y.S.2d 722, 726, 283 A.D.2d 801, 804 (3rd Dep't 2001) (granting defendant's motion to dismiss because plaintiffs failed to sufficiently allege improper means) (internal quotations omitted); see also NBT Bancorp v. Fleet/Norstar Fin. Group, 87 N.Y.2d 614, 625, 641 N.Y.S.2d 581, 587 (N.Y. 1996) (holding that claim for tortious interference with contractual relations must allege an intent to injure plaintiffs); Snyder, 684 N.Y.S.2d at 239.

Furthermore, Plaintiffs' tortious interference with contractual relations claim must be dismissed because they do not allege either wrongful intent or that the conduct resulted in an actual breach of contract. See NBT Bancorp v. Fleet/Norstar Fin. Group, 87 N.Y.2d at 622-23; Gertler v. Goodgold, 487 N.Y.S.2d 565, 572, 107 A.D.2d 481, 489-90 (1st Dep't 1985). While a claim of this nature may survive without an allegation of malicious intent if a party alleges an actual past contractual breach caused by a defendant's action, see NBT Bancorp, 87 N.Y.2d at 622-23, Plaintiffs' allegation that the dissemination of the "Ineligibility List" "precludes [them]

from employment in any public school in New York State or the tri-state region," (Behrend Compl. ¶ 50; Hudson Compl. ¶ 51) clearly states a claim of *future* loss, and creates no inference of a *past* breach of contractual relations with a third party. Plaintiffs allegations are therefore insufficient to state a claim for tortious interference with contractual relations, and this claim must be dismissed as well.[3]

## III.  CONCLUSION

Plaintiffs' motions to consolidate are DENIED. Defendants' motions to dismiss as to Plaintiffs' due process claims are DENIED, and their motions to dismiss Plaintiffs' equal protection and state claims are GRANTED.

SO ORDERED.

Dated: September 25, 2006          /s/ Nicholas G. Garaufis___
Brooklyn, NY                       NICHOLAS G. GARAUFIS
                                   United States District Judge

---

[3] As I dismiss Plaintiffs' state claims, I need not address Defendants' alternative argument that Plaintiffs failed to provide notice of claim of their state actions.